UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHAN QURESHI,<br><br>    Plaintiff,<br><br>vs.<br><br>JANET NAPOLITANO, et al.,<br><br>    Defendants. | Case No.: C-11-05814-YGR<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Khan Qureshi filed a Complaint for a Writ of Mandamus and Declaratory and Injunctive Relief against Defendants: Janet Napolitano, Secretary of the Department of Homeland Security ("Secretary"); Alejandro Mayorkas, Director of the United States Citizenship and Immigration Services ("USCIS"); and Jerry Heinauer, Director of USCIS' Nebraska Service Center (collectively, "Defendants"). (Dkt. No. 1 ("Compl.").) Plaintiff brings his action under the Mandamus Act, 28 U.S.C. section 1361, and the Administrative Procedure Act, 5 U.S.C. section 551, *et seq.*, seeking an order to compel the USCIS to adjudicate his application for adjustment of status to become a permanent resident.

Defendants filed a Motion for Summary Judgment on April 10, 2012. (Dkt. No. 24 ("Mot.").) On May 4, 2012, Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment. (Dkt. No. 28 ("Cross-Motion").) Defendants filed their Reply in Support of Motion for Summary Judgment and Response to Cross-Motion for Summary Judgment on May 10, 2012. (Dkt. No. 29 ("Reply").) The Court held a hearing on the cross-motions on June 12, 2012. (Dkt. No. 30.)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** Defendants' Motion for Summary Judgment and **GRANTS** Plaintiff's Cross-Motion for Summary Judgment.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff is a native and citizen of Afghanistan. (Dkt. No. 28-2, Plaintiff's Response to Defendants' Statement of Undisputed Facts ("Responsive Statement") at No. 1.) Plaintiff was granted asylee status on or about May 7, 2001. (Dkt. No. 28-1, Declaration of Khan Qureshi ("Qureshi Decl.") ¶ 2; Dkt. No. 24-2, Declaration of Michael Rexroat ("Rexroat Decl.") ¶ 4.) On or about April 15, 2003, Plaintiff filed a Form I-730 to petition for his wife and daughter to join him in the United States. Rexroat Decl. ¶ 5. While Plaintiff's wife's application was granted, the daughter's application was denied because she was born after the date of the asylum grant. *Id.* Despite the approval of her own petition, Plaintiff's wife remains in Pakistan with their daughter, who is now nine years old. Qureshi Decl. ¶ 7. As an asylee, Plaintiff is able to apply for and be granted work authorization documents to travel abroad. Responsive Statement at No. 10. Plaintiff's most recent employment authorization document expired in 2003 and he has applied for and been granted a travel document on five occasions. *Id.* Plaintiff's current application for a new travel document is pending and within normal processing times. *Id.* Plaintiff visits his family about once or twice every two years. Qureshi Decl. ¶ 7.

On or about June 4, 2007, Plaintiff submitted a Form I-485 application ("Application") seeking adjustment of his status to become a legal permanent resident. Responsive Statement at No. 2. Plaintiff has been fingerprinted in connection with either his Application or requests for travel documents, and the USCIS has completed other required security and background checks. Rexroat Decl. ¶¶ 9–11. Plaintiff's Application is currently pending based on the USCIS's finding that he was previously involved with the Taliban and Mujahidin. Responsive Statement at Nos. 2–6. Specifically, Plaintiff's asylum application indicated that between 1989 and 1992, he helped distribute material aid to the Mujahidin, which is currently designated as a Tier III terrorist organization.

---

[1] For ease of reference, the following acronyms are used herein: Administrative Procedure Act ("APA"), Consolidated Appropriations Act of 2008 ("CAA"), and Immigration and Nationality Act ("INA").

2

Responsive Statement at No. 3–5; *see also* Qureshi Decl. ¶ 5. The USCIS's position is that Plaintiff's involvement with the Mujahidin renders him inadmissible at this time for a change in status under the INA. Responsive Statement at No. 6; *see* Rexroat Decl. ¶¶ 12 (USA PATRIOT Act and REAL ID Act expanded terrorist-related grounds of inadmissibility) & 15 (inadmissible for having provided "material support" to a terrorist organization).

On December 26, 2007, the CAA amended and expanded the Secretary's authority to *exempt* certain terrorist-related grounds for inadmissibility as they relate to Tier III organizations or to individual aliens. Rexroat Decl. ¶¶ 13 & 18. The exemption process is "intentionally deliberate" and requires not only that a number of factors be considered, but also consultation between the Secretary, Attorney General, and Secretary of State. *Id.* ¶¶ 16 & 21; *see also* 8 U.S.C. § 1182(d)(3)(B)(i). On March 26, 2008, the USCIS issued a memorandum that instructed that "adjudicators should withhold adjudication of cases that could benefit from the Secretary's expanded discretionary authority under the CAA." Rexroat Decl. ¶ 22. In accordance with its policy memorandum and guidance issued thereafter, Defendants have placed Plaintiff's Application on an administrative hold to determine if he might qualify for an exemption. *Id.* ¶¶ 22 & 24; *see also* Responsive Statement at Nos. 6–8. The Secretary has, in recent years, exercised authority to exempt certain organizations from being considered terrorist organizations, but "[n]one of the exercises of exemption authority issued to date would benefit [Plaintiff] in relation to his voluntary provision of material support in the form of food and clothing to the Mujahidin." Responsive Statement at No. 7; Rexroat Decl. ¶¶ 20 & 23 (over 14,000 exemptions granted in cases involving terrorist-related inadmissibility grounds). Defendants have stated that "[i]f USCIS were ordered to complete the adjudication of Plaintiff's application for adjustment of status, the case would likely be denied without prejudice to allow [him] to re-file." Rexroat Decl. ¶ 24; Responsive Statement at No. 8. USCIS intends to adjudicate the Application as soon as an exercise of discretionary exemption authority occurs that would apply to Plaintiff. Responsive Statement at No. 9.

Plaintiff filed the Complaint on December 2, 2011. On February 3, 2012, Defendants filed a Motion to Dismiss on grounds that the Court lacked subject matter jurisdiction and that Plaintiff failed to state a claim. (Dkt. No. 11.) On March 23, 2012, the Court denied Defendants' Motion to Dismiss.

3

After holding that it was not divested of jurisdiction of this action, the Court found that the heart of Defendants' substantive argument for dismissal was that the decision to place Plaintiff's Application on hold was reasonable. *Id.* at 8–9. Such determination by the Court, however, was beyond the scope of a Rule 12(b)(6) motion and went to the merits of the case. *Id.* Accordingly, the Court denied Defendants' Motion to Dismiss in its entirety, but allowed the parties to file either a summary judgment motion or cross-motions for summary judgment. *Id.* at 9.

Defendants now seek summary judgment on the ground that the delay on Plaintiff's Application is "not an unreasonable delay" as a matter of law because: (i) he has admitted to providing material support (even if unintended and/or under duress) to the Mujahidin; (ii) the Mujahidin is a Tier III terrorist organization; (iii) he is ineligible for a status change under the INA; and (iv) his Application has been placed on hold per USCIS policy to allow an eventual positive adjudication of the Application if an exemption is exercised in his favor. Mot. at 1; *see* Responsive Statement at Nos. 3–8. The USCIS intends to adjudicate the Application as soon as an exemption applying to Plaintiff is available. Responsive Statement at No. 9; Rexroat Decl. ¶ 25.

In Plaintiff's Cross-Motion, he asserts that the five-year delay is unreasonable as a matter of law and that it is unreasonable for Defendants to provide "no indication of how much longer than five years [P]laintiff should wait for action." Cross-Motion at 4; Responsive Statement at No. 9. He also asserts that the terrorist-related ground of inadmissibility for providing material support to the Mujahidin should not have applied to him in the first place because he did not knowingly or voluntarily provide them with any support. Responsive Statement at Nos. 2 & 7; Qureshi Decl. ¶ 5. Plaintiff explains that while he lived in a refugee camp in Pakistan, he and his brother helped collect and pack clothes and food under the impression they were providing humanitarian relief to people living in their ancestral village in Afghanistan. Qureshi Decl. ¶ 5. He feels that his Application "should not have been included within the group of applications held for possible terrorism-related inadmissibility grounds" and that he qualifies for a waiver instead. *Id.*; *see also* Responsive Statement at No. 7. While Plaintiff has waited for a decision on his Application, he has been separated from his family in Pakistan. Qureshi Decl. ¶ 7. Once granted permanent residence, Plaintiff plans to petition immediately for his wife and daughter to join him in the United States. *See* Compl. ¶ 1. He can

4

afford to visit them only once or twice every two years, and must still obtain travel authorization documents to do so. Qureshi Decl. ¶ 7. Plaintiff suffers significant emotional harm from being separated from his family and constantly fearing for their safety in Pakistan. *Id.* By his Cross-Motion, Plaintiff seeks an order requiring Defendants to act on his delayed application within 30 days. Cross-Motion at 2 & 6.

**II.   DISCUSSION**

**A.   Legal Standard for Motion for Summary Judgment Under Fed. R. Civ. P. 56**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

**B.   The TRAC Factors[2]**

The APA permits judicial review of "final agency action for which there is no other adequate remedy in a court" and authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 704 & 706(1).[3] A plaintiff can claim relief under section 706(1)

---

[2] *Telecommunications Research and Action Center v. F.C.C.* ("*TRAC*") sets forth a six-factor test known as the "TRAC factors" to determine whether agency action is reasonable. *Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984).

[3] Plaintiff's first claim for relief pursuant to the Mandamus Act, 28 U.S.C. section 1361, seeks the same outcome as the second claim under the APA. *See* Compl. ¶¶ 9–10 & Relief ¶¶ 1–2; 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Namely, Plaintiff requests that the Court compel the USCIS to adjudicate his Application. Although the Motion and Cross-Motion do not separately address the Mandamus Act, the parties agree that use of the TRAC factors represents the appropriate standard for determining whether agency action is reasonable. Mot. at 3; Cross-Motion at 4. Moreover, the Ninth Circuit has stated that a claim seeking mandamus under the Mandamus Act

United States District Court
Northern District of California

by "assert[ing] that an agency failed to take a discrete agency action that it is required to take." *Norton v. South Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); 5 U.S.C. §555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.") The failure to act on a Form I-485 application falls under the purview of the APA. *Mugomoke v. Curda*, No. 2:10-CV-02166 KJM DAD, 2012 WL 113800, at *4 (E.D. Cal. Jan. 13, 2012).

The issue before the Court is whether Defendants' delay in processing Plaintiff's Form I-485 Application is reasonable. Unreasonable delay in the resolution of immigration applications depends on the particular facts of a case. *Islam v. Heinauer*, No. C 10-04222 JSW, 2011 WL 2066661, at *7 (N.D. Cal. May 25, 2011). The parties agree the Court's inquiry is guided by the *TRAC* factors. Mot. at 3; Cross-Motion at 4. These factors are:

> (1) The time agencies take to make decisions must be governed by a "rule of reason";
>
> (2) Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) The court should also take into account the nature and extent of the interests prejudiced by the delay; and
>
> (6) The court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Independence Mining Co.*, 105 F.3d at 507 n.7 (quoting *TRAC,* 750 F.2d at 80).

---

is essentially the same as one for relief under section 706 of the APA. *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 230 n.4 (1986)) (electing to analyze plaintiff's entitlement to relief under the APA). Accordingly, the Court will likewise address the APA claim only, noting that the outcome is determinative of both of Plaintiff's claims.

6

### 1. First Factor: Rule of Reason

In evaluating the "rule of reason" factor for holds on Form I-485 applications due to terrorist-related inadmissibility findings, courts focus, in part, on the length of delay. Four years or less have been found to be reasonable. *See, e.g, Sagier v. United States Citizenship & Immigration Service,* No. C11-05537 JSC, Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Cross Motion (Dkt. No. 19) at 13 (N.D. Cal. May 3, 2012) (four-year delay "not yet unreasonable"); *Islam*, 2011 WL 2066661, at *6–8 (point of unreasonableness had "not yet come" after three-year delay); *Khan v. Scharfen*, No. 3:08-CV-1398 SC, 2009 WL 941574, at *9–10 (N.D. Cal. Apr. 6, 2009) (one-year delay not unreasonable); *Hassane v. Holder*, No. C10-314Z, 2010 WL 2425993, at *5 (W.D. Wash. June 11, 2010) ("22 month delay is not unreasonable as a matter of law in the circumstances of this case"). By contrast, six years of more have been found to be unreasonable. *See, Mugomoke*, 2012 WL 113800, at *8–9 (Defendant's motion denied; near seven-year delay not shown to be reasonable) citing to *Al Karim v. Holder*, No. CV-00671 REB, 2010 WL 1254840, at *4 (D. Colo. Mar. 29, 2010) (six-year delay unreasonable); *Al Shamsawi v. Holder*, No. CV-194 CW, 2011 WL 1870284, at *4 (D. Utah May 16, 2011) (same), *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 938 (D. Minn. 2011) (thirteen-year delay unreasonable).[4]

"[L]ength of delay alone is not dispositive." *Mugomoke*, 2012 WL 113800, at *4 (quoting *Gelfer v. Chertoff,* No. 06-6724, 2007 WL 90238, at *2 (N.D. Cal. Mar. 27, 2007)); *Khan*, 2009 WL 941574, at *8 (also quoting *Gelfer*). A reasonableness determination is a fact-specific inquiry. *Mugomoke*, 2012 WL 113800, at *8 (citing *Gelfer*, 2007 WL 90238, at *2). Thus, courts have "look[ed] to the source of the delay-*e.g.,* the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Singh v. Still,* 470 F. Supp. 2d 1064, 1068 (N.D. Cal. Jan. 8, 2007) (alteration in original) (internal citations omitted).

Here, the parties do not disagree over the "source" of the delay.[5] On March 26, 2008, USCIS implemented a policy instructing that any cases which might benefit from the Secretary's

---

[4] While longer delays appear to be more likely found to be unreasonable, not all cases strictly conform to this pattern. *See Debba v. Heniauer,* 366 Fed. App'x. 696, 697–699 (8th Cir. Feb. 6, 2010) (Defendant's motion granted; ten-year delay not shown to be unreasonable).

[5] Defendants also distinguish Plaintiff's case from delays those involving name and background checks—to which the 180 days is intended to apply. Mot. at 5 (citing *Khan*, 2009 WL 941574, at *8).

7

discretionary authority under the CAA to create exemptions should be placed on hold with respect to adjudication. Rexroat Decl. ¶ 22. Pursuant to this policy, Defendants placed Plaintiff's Application on hold. *Id*. ¶ 24. The parties agree that Plaintiff has not contributed to the source of the delay in his case and that a pending investigation is not in progress.

Nevertheless, Defendants contend that five years is not an unreasonable length of time to determine whether Plaintiff will benefit from an exemption in the future, especially given that Congress intended to create a careful, deliberative process. Mot. at 4 (quoting *Khan*, 2009 WL 941574, at *9); 8 U.S.C. § 1182(d)(3)(B)(i); *Islam*, 2011 WL 2066661, at *7. Defendants also emphasize that waiting could be worthwhile: between mid-2006 and November 30, 2011, the USCIS has granted a total of 14,064 exemptions in cases involving terrorist-related inadmissibility grounds; and between June 2010 and November 30, 2011, Defendants released over 3,400 cases from hold. Rexroat Decl. ¶ 23.

By contrast, Plaintiff asserts that, aside from the terrorist-related ground being incorrectly applied to him, the delay is unreasonable because Defendants fail to give any indication of how much longer he must wait for a decision, given that he has already waited five years. Cross-Motion at 3–5. Plaintiff concedes that there is *no specific deadline* for adjudication of his Application, but contends that, by analogy, if the processing of immigrant benefit applications should be completed no later than 180 days after the initial filing of the application under Title 8 U.S.C. section 1571(b), five years is per se unreasonable.[6] *Id.* at 3.

---

[6] Plaintiff also relies on a Processing Time Information Chart on the USCIS website, which indicates that Nebraska Service Center generally processes adjustment applications within four months of filing. Plaintiff attached the USCIS Processing Time Information Chart ("Chart") as Exhibit A to the opposition brief without a declaration, despite this Court's *two prior warnings* that this practice violates Civ. L.R. 7-3 & 7-5. Aside from being improper, the Chart is inadmissible because it lacks foundation, has not been authenticated, and is hearsay. Fed. R. Evid. 901; Fed. R. Civ. P. 56(e). While Defendants did not object to the Chart, the Court is not bound to accept inadmissible matters, whether or not an objection is made. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484–85 (9th Cir. 1991); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). Plaintiff has provided no foundation for this Chart or the contents therein, other than to conclude that a response on a Form I-485 application exceeding four months is unreasonable as a matter of law. As such, the Court will not consider this inadmissible and unauthenticated Chart.

The Court recognizes that the exemption process itself requires careful deliberation, the coordination of numerous agencies, and that the process is, by nature, time-consuming. Defendants' motives in implementing USCIS policies and in placing Plaintiff's Application on hold are further not being questioned. Here, however, the Court finds that Defendants' failure to provide any indication of when Plaintiff can anticipate adjudication of his Application beyond the current five years is not reasonable. *See Mugomoke*, 2012 WL 113800 at *7 (total number of past exemptions did not provide any indication as to when plaintiff might be granted an exemption). As the court stated in *Mugomoke*, "for defendants to hold the application indefinitely in case they might, at some unspecified point in the future, consider an exemption does not constitute a 'rule of reason' that allows this court to find the delay reasonable." *Id.*; *Al-Rifahe*, 776 F. Supp. 2d at 936 (court cannot ignore the agency's obligation to act).

For these reasons, the Court finds that the first factor (the rule of reason) weighs in favor of Plaintiff.

### 2. Second Factor: Statutory Scheme

The presence of a statutory scheme —a congressionally-mandated timetable with which Congress expects the agency to proceed—may "supply content" for the "rule of reason" stated in factor one. *TRAC*, 750 F.2d at 80. Defendants emphasize there is no congressionally mandated timetable for adjudicating Form I-485 applications. Mot. at 4–5 (citing 8 U.S.C. §1159(b)). Plaintiff also concedes that Congress has not provided a definite timetable for agency action. Cross-Motion at 5. As such, the second factor does not weigh strongly in favor of either party.

### 3. Third and Fifth Factors: Effect on Human Health and Welfare and Prejudice

The third and fifth factors overlap and require the Court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay. *Islam,* 2011 WL 2066661, at *7. Defendants contend that the prejudice to Plaintiff from the delay is merely "inconvenience," and this inconvenience must be balanced against the Defendants' need to comply with the exemption process under the CAA and USCIS policy. Mot. at 5–6 (citing *Khan*, 2009 WL 941574, at *9). Further, because Plaintiff has admitted to providing material support to a terrorist

9

organization, national security is implicated. Mot. at 6. Defendants conclude that the delay prevents a denial of his Application and, thus, the delay *benefits* him by avoiding the hardship of denial. Mot. at 5–6 (exemption would be an "unquestionabl[e] benefit").

Plaintiff disputes that he benefits from the delay. "[E]ven a denial [would be] action and he can pursue administrative and judicial review of an unfavorable decision whereas he cannot seek judicial review of continued inaction." Cross-Motion at 6. Plaintiff has also identified the personal hardships that he suffers as a result of his Application being placed on hold. Becoming a permanent resident will help him reunite with his family, but as long as his Application is pending, he can only periodically visit them in Pakistan, which is costly. Qureshi Decl. ¶ 7. Not only has he missed seeing his daughter grow up, Plaintiff bears heavy emotional and physical stress because he constantly fears for their safety. *Id.* Plaintiff also identifies his desire to eventually become a citizen so he can obtain "all the rights and privileged attendant thereto." Cross-Motion at 6; Qureshi Decl. ¶ 7. As to Defendants' reference to national security concerns, Plaintiff does not seem to dispute that there are larger national security issues at play but asserts that he is not a danger to the safety or security of the United States. He notes he has never been arrested and emphasizes that whatever "risk" he poses to national security is the same whether he is a permanent resident (his desired status) or an asylee (his current status). Qureshi Decl. ¶ 6; Cross-Motion at 5–6.

As to whether Plaintiff poses a danger, the Court agrees that a generalized concern over national security does not provide sufficient justification to hold his Application indefinitely. "[M]ere invocation of national security is not enough to render agency delay reasonable per se." *Singh*, 470 F. Supp. 2d at 1069. Defendants have not identified any national security concern specific to Plaintiff himself. Similarly, the Court is not persuaded that the delay is beneficial to Plaintiff, particularly because he prefers adjudication over indefinite waiting. *Mugomoke*, 2012 WL 113800, at *8 ("the fact that he wishes to have the application adjudicated now also supports an inference that the harm of delay is not remote or insignificant"). Plaintiff unquestionably recognizes the potential consequences of forcing the USCIS to decide his Application. Plaintiff is apparently ready and willing to take his chances with the appeals process if he is denied. Moreover, Defendants do not dispute that Plaintiff suffers emotionally and financially from being separated from his family and that the benefits of

permanent residence and eventual citizenship are also delayed while his Application is delayed. *See* Reply at 1–2.

On balance, the prejudice to Plaintiff is severe and the risk to national security by adjudicating Plaintiff's Application is minimal. Further significant health and welfare implications exist here for Plaintiff and his family. These factors weigh in favor of Plaintiff's position.

### 4. Fourth Factor: Effect of Expediting Delayed Action

Defendants contend that an order requiring the expedition of Plaintiff's Application is a "direct challenge[] to the agency's process for exercises of discretionary exemption authority." Mot. at 7. It would also require them "to truncate any consideration of a potential exemption that might benefit [Plaintiff]" and intrudes on the USCIS's competing interest of granting exemptions. *Id.* Plaintiff directs his argument on the fourth factor to the fact that he is not a risk to national security. Cross-Motion at 5–6; Qureshi Decl. ¶ 5.

The Court is not persuaded by Defendants' argument that a decision on Plaintiff's Application will challenge the USCIS's processes for granting exemptions. The Court is not directing the USCIS *how* to adjudicate, but merely *to* adjudicate. Plaintiff does not by this action seek a favorable decision—he seeks *a* decision, positive or negative. Further, the notion that the USCIS's interests are challenged is unpersuasive. Plaintiff's Application is stagnant. No ongoing investigation is in progress. If his Application were only pending for a short period of time, the case may be different. Here, additional time is not warranted. The fact that an exemption in Plaintiff's case may be premature is not dispositive nor does it intrude on the Secretary's discretion. The USCIS still has a duty to act. 5 U.S.C. §§ 555 & 706(1).

Because Plaintiff merely seeks a ruling on his Application (even if a denial), does not seek to force the USCIS to affirmatively provide him *with* an exemption, and does not seek to otherwise change the USCIS policy, this factor weighs in Plaintiff's favor.

**5. Sixth Factor: Bad Faith**

There is no claim that Defendants have acted in bad faith. To the contrary, Plaintiff concedes that this factor inures to Defendants' benefit. Cross-Motion at 6. Even so, a court need not find that an agency acted in bad faith to conclude unreasonable delay. *Independence Mining Co.*, 105 F.3d at 510. Accordingly, this factor slightly favors Defendants.

**C. The Five-Year Delay Is Unreasonable.**

Viewing these factors in their totality, the Court concludes that the five-year delay on Plaintiff's Application is unreasonable. While Congress did not mandate a deadline for a decision on Plaintiff's Application, Defendants cannot hold the Application indefinitely. Even if Plaintiff could receive an exemption in the future, it is also possible he will never receive one. Defendants have provided no evidence regarding the likelihood of an exemption in the future or how rendering a decision would affect or challenge USCIS policies or the discretionary exemption process. While the hold policy may potentially benefit applicants, here, greater benefit inures to Plaintiff by adjudication. While Plaintiff waits on his Application, he has undisputedly suffered harm both financially and emotionally. In this case, the *TRAC* factors weigh in Plaintiff's favor, and as such, he is entitled to summary judgment.

**III. CONCLUSION**

For the foregoing reasons, Plaintiff's Cross-Motion for Summary Judgment is **GRANTED**, and Defendants' Motion for Summary Judgment is **DENIED**. Plaintiff shall prepare a form of judgment and submit to the Court after providing Defendants with a reasonable opportunity to review as to form.

Defendants are hereby **ORDERED** to adjudicate Plaintiff's Form I-485 Application forthwith, but in no event later than forty-five (45) days of the date of this Order.

This Order terminates Dkt. Nos. 24 & 28.

**IT IS SO ORDERED.**

Dated: June 28, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

12